**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Chambers of**<br>**Douglas R. Miller**<br>**United States Magistrate Judge** | **101 West Lombard Street**<br>**Baltimore, Maryland 21201**<br>**MDD_DRMChambers@mdd.uscourts.gov**<br>**(410) 962-7770** |

March 30, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Jeremey R. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 25-0645-DRM

Dear Counsel:

On February 26, 2025, Plaintiff Jeremey R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 10) and the parties' briefs (ECF Nos. 13, 29, and 31). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on March 21, 2017, alleging a disability onset of January 1, 2000. Tr. 285-288. In a determination dated July 27, 2017, Plaintiff was found disabled beginning on March 1, 2016. Tr. 115-118. Following a continuing disability review, it was determined that Plaintiff was no longer disabled as of July 25, 2022. Tr. 91. On January 9, 2024, and April 9, 2024, an Administrative Law Judge ("ALJ") held hearings. Tr. 29-63. Following the hearings, on April 29, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] as of July 25, 2022. Tr. 11-22. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Leland Dudek, the Acting Commissioner of Social Security, on February 26, 2025. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 2

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

"Ordinarily, the SSA employs a five-step sequential evaluation process" to assess disability. *Figgs v. Saul*, No. JMC-20-334, 2021 WL 3930708, at *1 (D. Md. Sept. 2, 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015)). "However, where the SSA granted a claimant benefits and subsequently terminated same, an eight-step continuing disability review evaluation process (for disability insurance benefits claims) and a seven-step continuing disability review evaluation process (for supplemental security income claims) guides the ALJ's analysis." *Id.* (citing 20 C.F.R. § 404.1594). The Court has explained this process as follows:

> At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claimant's impairment is compared to those in the Listing of Impairments [ ]. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is included in the Listing or is equivalent to a listed impairment, disability continues. If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step three. At step three, the Commissioner determines whether the claimant has experienced any medical improvement; if so, the Commissioner proceeds to step four, and if not, the Commissioner skips to step five. At step four, the Commissioner determines whether the medical improvement is related to the claimant's ability to work; that is, whether there has been an increase in the claimant's residual functional capacity [ ]. If not, the Commissioner proceeds to step five; if so, the Commissioner skips to step six. At step five—by which point the Commissioner has concluded that the claimant has not experienced medical improvement or the medical improvement is not related to the claimant's ability to work—the [C]ommissioner considers whether any of the exceptions to the medical exceptions to the medical improvement standard apply. 20 C.F.R. §§ 404.1594(d), (e). At step six, provided the medical improvement is related to the claimant's ability to work, the Commissioner determines whether the claimant's current impairments in combination are severe; if not, the claimant is no longer disabled. If so, the Commissioner proceeds to step seven and assesses the claimant's RFC to determine whether he or she can perform past relevant work experience. If the claimant can perform his or her past relevant work experience, the claimant is not disabled. If the claimant cannot perform past relevant work, however, the Commissioner reaches step eight and considers whether, given the claimant's RFC, age, education, and past experience, the claimant can perform other substantial gainful work.

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 3

*Id.* (omissions in original) (quoting *Furdon v. Berryhill*, No. 5:18-cv-BO, 2019 WL 1117908, at *2 (E.D.N.C. Mar. 11, 2019)). "Under each of the continuing disability review evaluation processes, there is no presumption of continuing disability." *Id.* at *2 (citation omitted).

Here, before commencing the eight-step review, the ALJ noted that on the comparison point decision ("CPD") date of July 17, 2017—i.e. the date of the most recent favorable medical decision finding that Plaintiff was disabled—Plaintiff had the following medically determinable impairments: "depressive disorder, posttraumatic stress disorder, traumatic brain injury, fractures of bones and lower extremity, osteoarthrosis, and substance addiction disorder." Tr. 13. The ALJ further noted that as of the CPD date, the Plaintiff retained the residual functional capacity ("RFC") to:

> perform work at the light exertional level; frequently balance; occasionally climb, stoop, kneel, crouch, and crawl; occasional right foot controls/push/pull; avoid concentrated exposure to vibration and hazards; understand and remember simple and some more detailed instructions; have significant problems working with others; limited capacity to adapt to changes in a work setting; and inability to perform even simple, routine work.

*Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. *Id.* At step two, the ALJ found that "[s]ince July 25, 2022, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." *Id.* At step three, the ALJ found that Plaintiff experienced medical improvement as of July 25, 2022. Tr. 15. At step four, the ALJ found that Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in his RFC. Tr. 16.

The ALJ accordingly skipped to step six, where he found that Plaintiff had the severe impairments of "depressive disorder, bipolar disorder with psychotic features, posttraumatic stress disorder, antisocial personality disorder, substance use disorder, thoracic spine compression fracture, and obesity." *Id.* He also found that Plaintiff had the non-severe impairments of mild right glenohumeral joint arthritis and a right acromioclavicular sprain. *Id.* At step seven, the ALJ assessed Plaintiff's current RFC as follows:

> Based on the impairments present since July 25, 2022, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking up to 6 hours and sitting up to 6 hours in an 8-hour workday; additional limitations include only occasional balancing as defined in the SCO (the Selected Characteristics of Occupations); only occasional climbing ramps or stairs, stooping, kneeling, crouching, crawling; no climbing ladders, ropes, or scaffolds; only occasional exposure to vibration; limited to jobs that require understanding, remembering, and carrying out simple instructions and

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 4

using judgment to make simple work-related decisions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; limited to only minimal interaction with the public (minimal defined as less than 10% of the workday), and only occasional interaction with coworkers or supervisors; and limited to dealing with only occasional changes in a routine work setting.

*Id.* Based on this RFC, the ALJ determined that Plaintiff was unable to perform past relevant work as a construction worker. Tr. 20.

At step eight, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy such as routing clerk, router, collator operator, and marker. Tr. 20-22. Therefore, the ALJ concluded that Plaintiff's disability ended on July 25, 2022. Tr. 22.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

Plaintiff raises a single argument on appeal: that "the ALJ failed to address material evidence, resolve contradictions, and adequately explain the reasons for determining that Plaintiff's conditions did not meet or equal the requirements of Listings 12.04 and 12.15 [20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.15] pursuant to the Paragraph C criteria of these listings." ECF No. 13 at 9. Plaintiff argues that the ALJ's analysis of the Paragraph C criteria was "boilerplate" and "conclusory," and "cited no medical facts and provided no elucidation of [the ALJ's] reasoning." *Id.* at 14. As such, Plaintiff argues, it violated the requirement that an ALJ provide a "coherent basis" for determining that a claimant does not meet or equal a Listing, and made it impossible for a reviewing court to perform a substantial evidence review. *Id.* at 15. Plaintiff points to evidence in the record which he asserts was sufficient to trigger the requirement that the ALJ provide this explanation of his reasoning on Listings 12.04 and 12.15, and which contradicted the

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 5

ALJ's assertion that there was "no evidence" to support the Paragraph C criteria for these Listings, including the criterion of "marginal adjustment." *Id.* at 15-17.

Defendant counters that the ALJ "properly concluded that the highly restrictive limitations required for 'marginal adjustment' were plainly not met in this case," and that the ALJ cited "the only mental health counseling evidence in the record – which did not reflect significant issues with marginal adjustment . . . ." ECF No. 29 at 9-10. Defendant argues that the Court's review of the ALJ's Listings finding is not limited to the language cited by Plaintiff, but requires reading the ALJ decision as a whole, and that the finding can and should be upheld based on the ALJ's analysis at other steps of the sequential evaluation. *Id.* at 10.

The SSA's "Listing of Impairments" describes, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. At step two of the eight-step continuing disability review sequential evaluation process[3], an ALJ determines whether a claimant has an "impairment[] which meets or equals" a listed impairment (a "Listing"). 20 C.F.R. § 404.1594(f)(2). If so, the ALJ must find that a claimant's disability continues. *Id.*

An ALJ's task in evaluating whether a Plaintiff meets or equals a Listing, and the Court's task in reviewing that evaluation, are governed by the following principles: First, "if the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a listing, the ALJ must discuss the relevant listing and provide a coherent explanation regarding whether the claimant's impairments meet or equal it." *Angela C. v. Kijakazi*, No. TJS-21-0349, 2022 WL 601098, at *2 (D. Md. Mar. 1, 2022) (quoting *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013)). Because "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling" as to why a claimant does not meet or equal a Listing, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (citations omitted).

Accordingly, "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 295 (citations omitted); *see Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (remanding due to "conclusory" and "perfunctory" step-three analysis).

However, while "the ALJ is compelled to provide a coherent basis for his step-three determination," a reviewing court "must read the ALJ's decision as a whole," and therefore "an ALJ's step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ's

---

[3] Step two of the eight-step evaluation process under 20 C.F.R. § 404.1594 (and its SSI counterpart, § 416.994) is substantially similar to step three of the more common five-step evaluation process under 20 C.F.R. §§ 404.1520 and 416.920. Considering the similarity in language and function, the Court assumes that case law interpreting the latter applies equally to the former. Discussions of "step three" in cases cited in this letter opinion should therefore be read to apply equally to step two of the continuing disability review evaluation.

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 6

findings at subsequent steps in the analysis." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). *See Smith v. Astrue,* 457 F.App'x 326, 328 (4th Cir. 2011) (despite ALJ's "cursory" explanation of step-three finding, it was supported by substantial evidence based on the ALJ's decision as a whole).

Said another way, even if the ALJ's explicit step-three analysis would be deficient standing alone, remand will not be required "where it is clear from the record which listing or listings . . . were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002).

Nonetheless, if "the ALJ's failure to adequately explain his reasoning precludes . . . the district court from undertaking a 'meaningful review' of the finding that [a plaintiff] did not satisfy [a] Listing," *Radford,* 734 F.3d at 296, it is "not the province of [the] Court to cobble together a meaningful explanation for a determination that a Listing has not been not satisfied." *Figgs,* 2021 WL 3930708, at *5 (citing *Radford,* 734 F.3d at 296).

In this case, Plaintiff challenges the ALJ's determination that he did not meet or equal Listings 12.04, "Depressive, bipolar and related disorders," and 12.15, "Trauma- and stressor-related disorders."[4] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.15. The criteria relevant to meeting or equaling each of these Listings is delineated in separate sections at each Listing, referred to as "Paragraphs" (although they are frequently longer than a single paragraph). To meet or equal one of these Listings, a claimant must satisfy the Listing's Paragraph A criteria, and must additionally satisfy either the Paragraph B criteria or the Paragraph C criteria. *Id.* §§ 12.04, 12.15.

Specifically, Plaintiff challenges the ALJ's analysis of the Paragraph C criteria for these Listings.[5] Paragraph C is identical in both Listings and requires a claimant's mental disorder to be "serious and persistent," meaning that the claimant must have "a medically documented history of the existence of the disorder over a period of at least 2 years," as well as:

---

[4] The ALJ also considered Listing 12.08, "Personality and impulse-control disorders," but Plaintiff does not challenge the ALJ's determination that Plaintiff did not have an impairment meeting or equaling that listing.

[5] Plaintiff does not appear to contest the ALJ's determination that the Paragraph B criteria are not met for either Listing. Paragraph B is identical for both Listings and requires the "[e]xtreme limitation of one, or marked limitation of two," of four "areas of mental functioning," which include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* §§ 12.04B, 12.15B. Defendant does not appear to contest the ALJ's implicit finding that the Paragraph A criteria are met for both Listings. Paragraph A requires medical documentation of the disorders relevant to each Listing. *See id.* §§ 12.04A(1), 12.15A.

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 7

> 1.      Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder (see 12.00G2b); and
>
> 2.      Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life (see 12.00G2c).

*Id.* §§ 12.04C, 12.15C.

The regulations further explain the "marginal adjustment" requirement of Paragraph C for both listings as follows:

> "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports. Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

§ 12.00(G)(2)(c) (internal citation omitted).

The ALJ analyzed the Paragraph C criteria for Listings 12.04 and 12.15 as follows:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life (Ex. 4F).
>
> There is no evidence that the claimant has a medically documented history of a mental disorder over a period of at least 2 years with evidence of both: medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder and marginal adjustment, that is minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life.

Tr. 14-15. Standing alone, this is a conclusory analysis without explanation of its reasoning or the underlying evidence. (The ALJ cites generally to Exhibit 4F but does not discuss it.)

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 8

However, the Court must look to the rest of the ALJ decision to determine if it contains an "equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion." *Schoofield*, 220 F. Supp. 2d at 522; *see Keene*, 732 F. App'x at 177. In doing so, the Court focusses on Plaintiff's arguments.

The Court agrees with Plaintiff that the decision read as a whole does not contain analysis supporting the conclusion that "[t]here is no evidence that the claimant has a medically documented history of a mental disorder over a period of at least 2 years," Tr. 14; or the conclusion that "[t]here is no evidence . . . of . . . medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [Plaintiff's] mental disorder."[6] Tr. 14-15. As Plaintiff correctly points out, the ALJ's "own findings elsewhere in the decision" include "severe mental impairments dating back to the 2017, continuous treatment through 2022, psychiatric hospitalizations, and ongoing medication management into 2023." ECF No. 13 at 15. The decision does not provide analysis contrary to these findings about the duration of the impairments, or suggesting that Plaintiff's treatment did not diminish the symptoms and signs of his mental disorder.

However, the Court disagrees with Plaintiff as regards the ALJ's conclusion that "[t]he record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." Tr. 14.

Plaintiff points to two episodes which touch on this criterion: First, on August 1, 2022, Plaintiff reported to his Psychiatric Mental Health Nurse Practitioner that he was experiencing an "'increase in anxiety and difficulty sleeping related to receiving a disability determination that he was able to work,' which led to medication changes and close follow-up," ECF No. 13 at 16 (quoting Tr. 18). Second, on March 3, 2023, Plaintiff presented to a hospital emergency department with suicidal ideation, which he and his mother attributed to learning of the loss of his Social Security benefits. *Id*. at 17 (citing Tr. 18).

The ALJ discusses these two episodes in detail as part of his RFC assessment. For the August 1, 2022 episode, the ALJ notes that:

> [Plaintiff's] mental status exam noted anxious mood but full range affect, good eye contact, intact attention and concentration, good insight, goal-directed and logical thought process, no impairment in judgment, and no memory impairment (Ex. 4F/7). He was seen again in the hospital overnight on August 22, 2022 with normal mood, affect, insight, and judgment, intact recent and remote memory, and he was attentive with spontaneous speech (Ex. 3F/27).

---

[6] It is not entirely clear whether the ALJ intended to make those two conclusions or simply found that, because the "marginal adjustment" criterion was not satisfied, the Plaintiff could not satisfy the Paragraph C criteria, which require all three components of a serious and persistent disorder, ongoing interventions that diminish the symptoms, *and* marginal adjustment.

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 9

Tr. 18. For the March 3, 2023 episode, the ALJ notes that:

> On interview, he did not make eye contact and his speech was low volume and monotone. He was terse and irritable. When the claimant's mother arrived, she stated that the claimant was upset because his social security payments had been canceled and he had no source of support, which led to his suicidal ideation. When he was reassessed, he reported that he was feeling better and was no longer experiencing suicidal ideation. He admitted that he was "upset because he just found out bad news about his social security." He was discharged home with his mother (Ex. 5F/5 -18). At an emergency room visit for an unrelated issue in July 2023, he had normal mood, speech, and attention (Ex. 6F/7).

*Id.*

In each of these discussions, the ALJ begins with the Plaintiff's initial poor reaction to the stressor (increase in anxiety and insomnia in the first episode, suicidal ideation in the second); notes some countervailing contemporary observations (an otherwise normal mental status exam in the first episode, quick subsiding of suicidal ideation in the second); and traces a return to normal findings in relatively short order in each instance. With regard to both episodes, the ALJ goes on to state:

> Overall, the claimant's mental impairments appear to be well controlled with medication. He did report increased anxiety after receiving a disability cessation notice and he had acute suicidal ideation after receiving "bad news" about his social security disability, but his other medical records document relatively unremarkable mental status findings. He had normal affect, memory, concentration, insight, judgment, thought process, eye contact, and concentration, particularly when taking medications as prescribed.

*Id.* (record citations omitted).

From these discussions, it is possible to follow the ALJ's reasoning that the record evidence did not support "marginal adjustment." Therefore, while the ALJ's explicit discussion of Listings 12.04 and 12.15 is conclusory, this later discussion of the medical evidence "allows this Court readily to determine whether there was substantial evidence to support the ALJ's . . . conclusion." *Schoofield*, 220 F. Supp. 2d at 522; and the "ALJ's conclusion that [Plaintiff] did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis." *Keene*, 732 F. App'x at 177. *See Smith,* 457 F. App'x at 328.

From the evidence highlighted by the ALJ in the RFC analysis, the Court finds that there was substantial evidence to support the ALJ's conclusion that Plaintiff did not satisfy the exacting "marginal adjustment" criterion, which requires "minimal capacity to adapt to changes" such as when a change results in "becom[ing] unable to function outside of [the] home or a more restrictive setting, without substantial psychosocial supports," or "necessitate[s] a significant change in medication or other treatment," or "require[s] [a claimant] to be hospitalized or absent from work, making it difficult . . . to sustain work activity over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(c). Accordingly,

*Jeremey R. v. Bisignano*
Civil No. 25-0645-DRM
March 30, 2026
Page 10

there was substantial evidence from which to conclude that Plaintiff did not satisfy the Paragraph C criteria for Listings 12.04 and 12.15, and therefore that Plaintiff did not meet or equal those Listings.

While the Plaintiff may disagree with the ALJ's balancing of the evidence, "this Court may not 'reweigh conflicting evidence' in its substantial evidence review; where reasonable minds may differ, it must defer to the ALJ." *Willa F. v. Kijakazi*, 2021 WL 5167018, at *5 (D. Md. Nov. 5, 2021) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). Affirmance is therefore appropriate.

## V.    **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge